988 So.2d 708 (2008)
FIRST SPECIALTY INSURANCE COMPANY, Appellant,
v.
CALIBER ONE INDEMNITY CO., National Healthcare Corp., National Health Corp., and Roger Friedbauer, Appellees.
No. 2D07-3257.
District Court of Appeal of Florida, Second District.
August 15, 2008.
*710 Scott A. Cole and Luisa M. Linares of Cole Scott & Kissane, P.A., Miami, for Appellant.
Larry I. Gramovot of Gramovot & Takacs, P.L., Tallahassee, and Kenneth S. Takacs of Gramovot & Takacs, P.L., Tampa, for Appellee Caliber One Indemnity Co.
Darryl L. Gavin of Rumberger, Kirk & Caldwell, A Professional Association, Orlando, for Appellees National Healthcare Corp. and National Health Corp.
No appearance for Appellee Roger Friedbauer.
VILLANTI, Judge.
First Specialty Insurance Company appeals the partial final summary judgment entered against First Specialty and in favor of its insureds, National Healthcare Corp. and National Health Corp. (collectively NHC), in a declaratory judgment action concerning insurance coverage. The trial court held that the insurance policies issued by First Specialty and Caliber One Indemnity Co. provided coverage for the punitive damages and attorneys' fees awarded against NHC in an underlying wrongful death action. For the reasons set forth below, we reverse.
In 2000, the Estate of Patrick Canavan filed a wrongful death action against NHC, Roger Friedbauer, and several other defendants who are not relevant to this appeal.[1] During the jury trial, the trial court granted a directed verdict in favor of Friedbauer. Subsequently, the jury returned a verdict against NHC and awarded punitive damages. The trial court then entered an order awarding the Estate attorneys' fees to be paid by NHC. On appeal, this court reversed the directed verdict in favor of Friedbauer, reversed the amount of the punitive damages award against NHC, and remanded for further proceedings. See Estate of Canavan v. Nat'l Healthcare Corp., 889 So.2d 825 (Fla. 2d DCA 2004).
Thereafter NHC's primary insurer, Caliber One, filed a declaratory judgment action seeking a determination that the insurance policy it issued to NHC did not provide coverage for the punitive damages and attorneys' fees awarded to the Estate in the wrongful death action. Caliber One also sought a determination that it was not obligated to either defend or indemnify Friedbauer because he was neither a named nor an omnibus insured under the policy issued to NHC. First Specialty, NHC's excess insurer, intervened in the case asserting that its excess insurance policy covered only those types of damages covered by the primary insurance policy issued by Caliber One and, therefore, also *711 did not provide coverage for the punitive damages or attorneys' fees awarded against NHC.
The Caliber One policy provided coverage for "damages" which might be awarded against NHC if those damages were within the terms and conditions of the policy. The professional liability section of the policy stated:
We will pay those sums that the insured becomes legally obligated to pay as "damages" because of any act, error or omission in the rendering or failure to render "professional services" by an insured or by any person for whose acts, errors or omissions an insured is legally responsible.
The policy defined "damages" as "any compensatory amount which an Insured is legally obligated to pay for any claim to which this insurance applies, but does not include injunctive or equitable relief or the return of fees or charges for services rendered." (Emphasis added.) The policy's exclusions section stated that coverage did not apply to "[a]ny civil, criminal or administrative fines or penalties levied against an insured." The policy did not use the term "punitive damages" and did not expressly exclude payment of attorneys' fees.
First Specialty's excess insurance policy "applie[d] only to damages covered by the primary insurance and [was] subject to the same terms, conditions, exclusions, definitions and limitations as the primary insurance." The policy stated that it would "pay on behalf of the insured those sums in excess of primary insurance, that the insured becomes obligated to pay as damages for liability imposed on the insured by law or assumed under an insured contract." However, "if primary insurance or other insurance [did] not pay a loss, for any reason other than exhaustion of their limit of insurance, then [First Specialty] shall not pay such loss."
First Specialty and Caliber One subsequently filed motions for partial summary judgment as to their claims against NHC. Caliber One argued that the insurance policy issued to NHC did not provide coverage for punitive damages because the policy's definition of damages stated that it would cover "any compensatory amount" which would not include punitive damages. It also argued that the policy expressly excluded coverage for civil penalties or fines and that punitive damages were a type of civil penalty or fine. Caliber One also argued that the policy did not cover attorneys' fees. NHC filed a cross-motion for summary judgment, arguing that the policy language was ambiguous and therefore should be interpreted in favor of coverage. The trial court concluded that neither the Caliber One policy nor the First Specialty policy explicitly excluded coverage for awards of punitive damages or adverse attorneys' fees and, therefore, both policies provided coverage for both types of awards. First Specialty then filed this appeal.[2]
On appeal, First Specialty argues that the insurance policy's definition of "damages," which defines them as "any compensatory amount which [the] Insured is legally obligated to pay," unambiguously limits coverage to compensatory damages because neither punitive damages nor attorneys' fees are "compensatory" in nature. *712 It also argues that the policy's exclusion for "[a]ny civil, criminal or administrative fines or penalties levied against an insured" excludes coverage for punitive damages because punitive damages are a type of civil fine or penalty. NHC responds that, as drafters of the policies at issue, Caliber One and First Specialty had control over the language of their policies and could have expressly and unambiguously excluded punitive damages and attorneys' fees from coverage. NHC argues that because the insurers failed to expressly and unambiguously exclude coverage for punitive damages or attorneys' fees, those two items are covered by the insurance contracts.
"[I]nsurance contracts must be construed in accordance with the plain language of the policy." Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003). Ambiguities in the contract, including ambiguities in exclusionary provisions, are construed in favor of the insured and against the insurer who drafted the policy. Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla.2005); State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla. 1986) (citing Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla.1979)). An insurance policy is considered ambiguous if the challenged policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage. Swire Pac. Holdings, Inc., 845 So.2d at 165. However, an insurance provision must actually be ambiguous before it is subject to these rules. Taurus Holdings, Inc., 913 So.2d at 532. "`[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision.'" Id. (quoting Hagen v. Aetna Cas. & Sur. Co., 675 So.2d 963, 965 (Fla. 5th DCA 1996)). "[A]bsent ambiguity, waiver, estoppel or contradiction of public policy, courts are not authorized to extend coverage beyond the plain language of the [insurance] policy." The Doctors Co. v. Health Mgmt. Assocs., 943 So.2d 807, 810 (Fla. 2d DCA 2006) (citing Velasquez v. Am. Mfrs. Mut. Ins. Co., 387 So.2d 427, 428 (Fla. 3d DCA 1980)), review denied, 956 So.2d 455 (Fla. 2007). In this case, we conclude that the Caliber One definition of damages is not ambiguous and covers only compensatory damages. Therefore, coverage for punitive damages and attorneys' fees is excluded from both the Caliber One and First Specialty policies.
First Specialty relies on the Middle District of Florida's decision in Travelers Indemnity Co. v. Despain, No. 5:05-cv-489-Oc-10GRJ, 2006 WL 3747318 (M.D.Fla. Dec. 18, 2006). The definition of the term "damages" and the exclusionary language at issue in Despain were identical to the ones at issue in this case.[3] The Middle District of Florida concluded that the damages covered by the Caliber One policy did not include punitive damages because "punitive damages are not compensation for an injury, and are separate and distinct from compensatory damages." Id. at *4. The court explained that while compensatory damages are intended to make an injured party whole, punitive damages go beyond actual damages and are intended to punish the defendant or deter others. Id. Based on these principles, the court in Despain concluded that the definition of "damages" contained in Caliber One's policy was not ambiguous; when it stated that *713 it would cover any "compensatory amount" awarded against the insured, it did not include punitive damages. Id. We find Despain's reasoning persuasive.
Compensatory and punitive damages serve different purposes. The purpose of compensatory damages is to compensate the injured party and make it whole to the extent its injury can be measured in terms of money. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545, 547 (Fla.1981); Coop. Leasing, Inc. v. Johnson, 872 So.2d 956, 958 (Fla. 2d DCA 2004); Despain, 2006 WL 3747318, at *4. The purpose of punitive damages, however, is not to compensate the injured party but to punish a defendant or to act as deterrent. Mercury Motors Express, 393 So.2d at 549. Punitive damages are awarded over and above actual damages suffered by the injured party to enhance compensatory damages due to the wanton, reckless, malicious, or oppressive nature of the defendant's acts. Id. at 547; Ellis v. Golconda Corp., 352 So.2d 1221, 1225 (Fla. 1st DCA 1977).
In this case, the term "damages" is defined in Caliber One's primary liability policy as "any compensatory amount." Yet punitive damages are not "compensation" for an injury. See DeShong v. Mid-States Adjustment, Inc., 876 S.W.2d 5, 7 (Mo.Ct.App.1994) (holding that an insurance policy that provided coverage for amounts the insured was "legally required to pay to compensate others for loss" did not cover a punitive damages award; the term "compensate" did not include punitive damages because "punitive damages are never awarded as compensation"). Because the insurance contract limits the scope of coverage to compensatory amounts, it is clear that the policy by its plain language intended to cover compensatory damages and not punitive damages. See Despain, 2006 WL 3747318, at *4; see also Fluke Corp. v. Hartford Accident & Indem. Co., 102 Wash.App. 237, 7 P.3d 825, 829 (2000) (noting that an insurance company can exclude coverage for punitive damages by "inserting the word `compensatory' or by specifically excluding punitive damages").
NHC argues that we should find the policy's definition of "damages" insufficient to exclude coverage for punitive damages because First Specialty: (1) could have defined "damages" as "compensatory damages" instead of as "compensatory amount" and/or (2) could have explicitly excluded punitive damages from coverage. We reject this argument because "the mere fact that a provision in an insurance policy could be more clearly drafted does not necessarily mean that the provision is otherwise inconsistent, uncertain or ambiguous." Pridgen, 498 So.2d at 1248. Once the insurer limited coverage to "any compensatory amount," there was no need to further refine that term or explicitly mention punitive damages, even if doing so could have made the scope of coverage clearer.
We also agree with the Middle District of Florida's conclusion that even if the definition of "damages" contained in the Caliber One policy could be read to include punitive damages, the policy's exclusions precluded coverage because they specifically excluded coverage for "civil penalties or fines" levied against the insured. See Despain, 2006 WL 3747318, at *4. The Caliber One policy excluded coverage for "[a]ny civil ... fines or penalties levied against an insured." Courts have described punitive damages as "nothing more than civil fines determined by juries instead of judges." Zuckerman v. Robinson, 846 So.2d 1257, 1261 (Fla. 4th DCA 2003); see also Int'l Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 48, 99 S.Ct. 2121, 60 *714 L.Ed.2d 698 (1979) ("Punitive damages `are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.'") (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)).
We reject NHC's argument that U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061 (Fla.1983), supports a finding that insurance coverage existed for the punitive damages award in this case. We recognize Bould's general pronouncement that public policy permits insurance coverage of punitive damages when the insured is simply vicariously liable for the wrongdoing of another person. Id. at 1064. However, Bould's pronouncements are inapplicable to this case. There is no indication that the insurance policy at issue in Bould involved a definition of the term "damages" similar to the one at issue in this case. The insurance policy in Bould did not use the term "compensatory" to describe the damages it would cover. Likewise, there is no indication that the policy in Bould contained an exclusion for civil penalties like the one that existed in this case. Further, Justice McDonald's dissent observed that the insurance policy in Bould provided coverage for "all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage." Id. at 1069. That language is broader than the language at issue in this case and makes Bould inapplicable.
We also hold that attorneys' fees were not covered by the insurance policies at issue. The policies did not expressly provide coverage for attorneys' fees awarded against NHC in litigation. Therefore, attorneys' fees would be covered under the policies only if fees are considered "damages." However, Florida courts have held that attorneys' fees are not damages. Attorneys' fees "are ancillary to damages, and are not part of a substantive claim." Scottsdale Ins. Co. v. Haynes, 793 So.2d 1006, 1009 (Fla. 5th DCA 2001) (citing Cheek v. McGowan Elec. Supply, 511 So.2d 977 (Fla.1987)); see also Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 263 (Fla. 2d DCA 2004) ("Attorney's fees are not damages.").
Although we reverse the summary judgment order entered in favor of NHC, we cannot remand for entry of judgment in favor of First Specialty because one issue remains to be resolved. NHC claimed below that it was entitled to coverage for punitive damages on a theory of promissory estoppel. It alleged that the insurers were estopped from denying coverage because Caliber One's agent had expressly represented to NHC that the insurance policy sold to NHC did not have an exclusion for punitive damages and that such representation induced NHC to purchase the policy. The argument was raised at the summary judgment hearing, but the trial court did not address it because it granted summary judgment in favor of NHC based on its interpretation of the policy language. Florida courts have recognized that, in certain circumstances, "promissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice." Crown Life Ins. Co. v. McBride, 517 So.2d 660, 662 (Fla.1987); see also Doe v. Allstate Ins. Co., 653 So.2d 371, 374 (Fla.1995); Warren v. Dep't of Admin., 554 So.2d 568 (Fla. 5th DCA 1989). Nevertheless, because the trial court did not address the estoppel issue raised by NHC, the issue was not fully developed below and is not properly before us. We therefore reverse and remand, without prejudice to NHC to further pursue this estoppel issue below.
*715 Reversed and remanded for further proceedings.
LaROSE, J., and GILNER, MARC B., Associate Judge, Concur.
NOTES
[1] The Estate of Canavan lawsuit arose from damages allegedly suffered by a patient while residing in a nursing home owned, operated, and/or managed by NHC, Friedbauer, and several other defendants.
[2] This case remains pending in the trial court as to the claims relating to coverage for Friedbauer. However, we have jurisdiction to entertain this appeal because the partial summary judgment at issue completely disposes of the case as to NHC. See Fla. R.App. P. 9.110(k); Kidwell v. Gen. Motors Corp., 975 So.2d 503, 504 (Fla. 2d DCA 2007) (stating that a partial final judgment is appealable if it totally disposes of a case against a party); Szewczyk v. Bayshore Props., 456 So.2d 1294, 1296 (Fla. 2d DCA 1984).
[3] In fact, as in this case, Caliber One issued the primary insurance policy in Despain. 2006 WL 3747318, at *1.